[Cite as *Wells v. Wells*, 2014-Ohio-5646.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

DARREN R. WELLS

    Appellant

    v.

CARRIE T. WELLS

    Appellee

C.A. No. 27097

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. 2007-01-0035

DECISION AND JOURNAL ENTRY

Dated: December 23, 2014

CARR, Judge.

{¶1} Appellant Darren Wells appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, that modified his child support obligation. This Court affirms in part, reverses in part, and remands.

I.

{¶2} Darren Wells ("Father") and Carrie Wells ("Mother") filed complaints for divorce against one another in 2007. Although both parties moved for temporary orders, they withdrew those motions and entered into an agreed entry wherein each was designated residential parent and legal custodian of the parties' two sons (d.o.b. 2/21/1996 and 5/27/1999), and Father was granted specific parenting time. The parties further agreed that Father would pay Mother $10,000.00 per month for Mother "to pay her various expenses." The agreed judgment entry contained no order specific to child support. After some disputes arose, the parties were able to come to another agreement wherein Father would make a lump sum payment of $40,000.00 to

Wife, while the trial court would retain jurisdiction over that payment and later determine "whether it shall be treated as property, fees or spousal support." Accordingly, the parties agreed that that sum would not be considered as child support. In April 2008, the domestic relations court issued an agreed judgment entry evidencing a shared parenting plan. With regard to the issue of child support, the agreed shared parenting plan stated merely that "child support shall be pursuant to agreement or c[our]t order[.]"

{¶3} The matter proceeded to trial on the parties' divorce on December 23, 2008. On May 4, 2009, the domestic relations court issued a purported judgment entry of divorce which left issues of property division and child support unresolved. After the parties appealed, this Court by journal entry dismissed the appeal for lack of a final, appealable order because the matter was not yet fully resolved. *Wells v. Wells*, 9th Dist. Summit No. 24784 (July 7, 2009).

{¶4} Before the trial court could resolve the above outstanding issues and issue a final decree of divorce, the parties engaged in disputes relating to matters addressed in the May 4, 2009 entry, as well as child custody issues previously resolved in an April 10, 2008 agreed shared parenting plan. The domestic relations court held a hearing on April 20, 2010, to address all pending issues. On July 28, 2010, the court issued a judgment entry, dividing the parties' property, ordering spousal support, incorporating the parties' agreed shared parenting plan, and ordering child support. Both parties appealed that judgment. *Wells v. Wells*, 9th Dist. Summit No. 25557, 2012-Ohio-1392.

{¶5} This Court affirmed the domestic relations court's judgment as it related to matters involving discovery, determination of the marriage termination date, the division of property, spousal support, and parenting issues. We reversed, however, as to the trial court's determination of child support, concluding that the court failed to apply the proper standard

where the parents' combined income was above $150,000. *Id.* at ¶ 42-48. This Court remanded the matter to the domestic relations court for a redetermination of child support after proper consideration of the needs and standards of living of the parties and the children.

{¶6} Mother subsequently filed a post-decree motion for determination of child support in consideration of this Court's directives. The trial court held a hearing to redetermine the issue of child support upon consideration of the needs and standard of living of the parties and children had the marriage continued. In its judgment entry, the domestic relations court established child support for two distinct periods of time, ordering Father to pay: (1) $6000.00 per month from February 1, 2007 (the previous effective start date for child support), until July 1, 2012 (the end date for spousal support), and (2) $13,000.00 per month from July 1, 2012, forward. Father appealed, raising five assignments of error for review. Father consolidates some of his assignments of error. To the extent that consolidation facilitates review, this Court also consolidates some assignments of error. We further rearrange some assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN REGARD
TO ITS DETERMINATION OF THE EFFECTIVE DATE OF THE CHILD
SUPPORT AND THE EFFECTIVE DATE IS IN ERROR.

{¶7} Father argues that the domestic relations court erred by using February 1, 2007, as the effective date of the child support order. This Court disagrees.

{¶8} The domestic relations court issued a final judgment entry of divorce on July 28, 2010, resolving all matters relevant to the divorce, including the issue of child support. This Court remanded the matter to the trial court for redetermination of the amount of child support because the court had failed to take into consideration the standard of living of each party and the

children. The domestic relations court previously determined in the July 28, 2010 entry that child support was to be effective as of February 1, 2007, and neither party appealed that determination.

{¶9} "'The doctrine of res judicata precludes a party from relitigating any issue that was, or should have been, litigated in a prior action between the parties.'" *In re M.R.L.*, 9th Dist. Summit No. 25618, 2011-Ohio-4997, ¶ 10, quoting *Dun-Rite Constr., Inc. v. Hoover Land Co.*, 9th Dist. Summit No. 25731, 2011-Ohio-4769, ¶ 8. The July 28, 2010 entry of divorce established child support in the amount of $1497.21, "effective as of February 1, 2007" based on Mother's "[c]ounterclaim seeking child support filed January 27, 2007[]." The child support worksheet attached to the decree calculated child support in this exact amount per month. The decree further noted the existence of a child support arrearage created as a result of using the February 1, 2007 start date, and provided that Father could cure that arrearage by adding 10% more to his obligation. Concededly, later in the decree, the domestic relations court ordered that Father shall pay Mother child support in the amount of $1491.23 per month, effective May 4, 2009. Father now argues that the February 1, 2007 effective date constituted a "clerical mistake."

{¶10} The difference in the two monthly payment amounts is arguably de minimis. The difference in the time period is not. Nevertheless, neither party argued on appeal that the child support order was ambiguous. Only now, after the domestic relations court reiterated its prior order establishing the February 1, 2007 effective date of child support has Father argued that that date is erroneous. Because Father could have raised the issue of the effective date of child support in his appeal from the July 28, 2010 final judgment, his argument is now barred by the doctrine of res judicata. Father's first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO FOLLOW OHIO LAW IN REGARD TO ITS DETERMINATION OF CHILD SUPPORT.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS DETERMINATION OF CHILD SUPPORT AND BY FAILING TO TAKE INTO CONSIDERATION AND GIVE CREDIT FOR THE SUBSTANTIAL DEVIATION FACTORS UNDER R.C. 3119.23 AND 3119.24.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO ADDRESS THE CORRECT TIME FRAME IN REGARD TO THE LIFESTYLE ENJOYED DURING THE MARRIAGE.

{¶11} Father argues that the domestic relations court erred by failing to first complete a child support computation worksheet based on a combined annual income of $150,000 as required by R.C. 3119.04. He further argues that the court erred by failing to consider the deviation factors set forth in R.C. 3119.23 and 3119.24 when it awarded child support in excess of the amount indicated pursuant to the child support computation worksheet based on a combined annual income of $150,000. Moreover, Father argues that the trial court erred by considering the lifestyles of the parties and children after the July 1, 2005 de facto termination date of the marriage. Finally, he argues that the domestic relations court abused its discretion in its redetermination of the amount of child support. This Court disagrees.

{¶12} R.C. 3119.04(B) provides, in pertinent part:

If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred

fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings.

**{¶13}** Although Father argues that the trial court failed to first complete a child support computation worksheet based on the parties' combined gross income of $150,000, he concedes in both his remand hearing brief below and in his appellate brief that the "[trial] court already performed that task in its July 28, 2010 Judgment Entry." He further agrees that the previously ordered amount of $1497.21 per month constitutes the correct amount pursuant to such computation. He has neither argued that, nor explained how, another computation based on the parties' combined gross income of $150,000 would have been different. In fact, he argues that child support should remain at this amount. Accordingly, we reject his assigned error in this regard.

**{¶14}** Father next argues that the domestic relations court considered the lifestyles of the parents and children during a period of time not relevant to the determination of child support. Father argues that the court was limited to considering the relative standards of living as of the de facto termination date of the marriage, in this case July 1, 2005. On the contrary, this Court previously recognized that courts properly "have considered the expenses of the parents and the standard of living the parents and children enjoyed prior to the separation and divorce, *as well as the current standard of living of the parents*." (Emphasis added.) *Wells*, 2012-Ohio-1392, at ¶ 46, citing *Bajzer v. Bajzer*, 9th Dist. Summit No. 25635, 2012-Ohio-252, ¶ 6; *Barone v. Barone*, 6th Dist. Lucas No. L-07-1336, 2008-Ohio-5793; *Bunkers v. Bunkers*, 6th Dist. Wood No. WD-06-030, 2007-Ohio-561; *Kendall v. Kendall*, 6th Dist. Ottawa No. OT-04-004, 2005-Ohio-1777; *Wolfe v. Wolfe*, 10th Dist. Franklin No. 04AP-409, 2005-Ohio-2331. Accordingly, Father's argument in this regard fails.

{¶15} Father further argues that the trial court erred by failing to consider the deviation factors set forth in R.C. 3119.23 and 3119.24 when it awarded child support in excess of the amount indicated pursuant to the child support computation worksheet based on a combined annual income of $150,000. The domestic relations court, however, was not obligated to consider those deviation factors in this case. As this Court has written:

> The level of support for a combined gross income of $150,000 is the starting point from which a trial court exercises its discretion in fashioning a child support award for parents with higher incomes. R.C. 3119.04(B). Downward deviations from that minimum require a determination "that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." *Id*. Support awards in excess of that minimum, however, are anticipated by R.C. 3119.04(B) and are not deviations.

*Bajzer* at ¶ 5. Accordingly, this Court concludes that the domestic relations court did not err by failing to consider the deviation factors set forth in R.C. 3119.23 and 3119.24 because it did not order a downward deviation from the minimum support based on the parents' combined gross income of $150,000. Instead, the trial court was merely required to consider "'that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued.'" *Bajzer* at ¶ 6, quoting *Berthelot v. Berthelot*, 154 Ohio App.3d 101, 2003-Ohio-4519, ¶ 24 (9th Dist.).

{¶16} Finally, Father argues that the domestic relations court abused its discretion in determining the amount of child support. "This determination is within the discretion of the trial court, and we review it for an abuse of that discretion." *Bajzer* at ¶ 6, citing *Peters v. Peters*, 9th Dist. Lorain Nos. 03CA008306, 03CA008307, 2004-Ohio-2517, ¶ 39-41. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When

applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶17} The evidence adduced at trial demonstrated that Mother earned little income during the marriage. As we recognized in *Wells*, 2012-Ohio-1392, at ¶ 2, she quit her job in the mid to late 1990's to accompany Father to Australia where his employer had transferred him. Mother did not return to work, instead remaining at home to raise the children. A few years after Father left the marital home, Mother enrolled in law school. She did not obtain employment until April 2011, when she became employed as a staff attorney in a law firm, earning a base salary of $75,000 a year. Although her base salary remained approximately the same over the next couple years, she earned bonuses that increased her annual income to approximately $100,000. Mother testified, however, that her bonuses were based on her work with regard to a specific case and that that case no longer required much work. Mother further testified that she believed that her position would be eliminated within six months to a year.

{¶18} On the other hand, the evidence demonstrated that Father's income had started to increase during the course of the marriage. For example, his income doubled from $98,000 to $188,000 from 1997 to 1998. In 2000, he earned $221,000, and $400,000 in 2002. By 2009, his income reached $774,000; by 2010, $1,039,901; by 2011, $1,438,944; and by 2012, just under $3,000,000. He conceded that his income had significantly increased since the parties' separation in 2005, and that his ability to buy things for the children now was significantly different from then.

{¶19} Both parents testified regarding their respective standards of living, as well as the children's standard of living. Mother admitted that from 2009 through June 2012, she received $840,000 in spousal support, plus almost $1500 per month for child support. She testified that

her monthly expenses, not including the children's tuition at University School, are currently $7500, and that she incurs a $2000 deficit every month. She testified that, since her spousal support ended, she is no longer able to afford many activities and things the children previously enjoyed, e.g., country club membership, tennis and golf camps, academic camps, skiing and snowboarding lessons, vacations, allowances, and desired clothing. Mother testified that her older son drives a 2007 Dodge minivan that her parents gave him. She testified that, before the divorce, the children were able to take three or four vacations every year, including at least one abroad. Despite her assertion that she was no longer able to provide those opportunities for the children, she admitted that she took them to Australia, Seattle, New York City, and Paris in 2012; and to Italy and Hawaii in 2013. She indicated, however, that other people paid for the vacations in 2013.

{¶20} Mother purchased a 5000 square foot home since the time of the divorce. She also bought herself a BMW 5 Series vehicle which requires a $1012.56 monthly payment. She admitted that Father has paid the entirety of the children's tuition at University School since 2009, amounting to a monthly payment of at least $3400. While Father provides medical insurance for the children, Mother has paid all unreimbursed medical, dental, and vision costs, including $257 for dental insurance and $960 for medical costs. Father testified that he has paid all orthodontia costs for the children.

{¶21} Mother claimed that she was unable to put aside any money towards the children's future college expenses. She was, however, able to invest $17,000 in her 401(K) in 2012, bringing the total in that account to over $40,000 since she began working at the law firm in 2011.

{¶22} Father testified that he remarried in 2009, and that he supports two stepchildren who live with him. His current wife does not work outside the home. He has travelled with his current wife and her children to Hawaii, New York, Chicago, and France. His own children did not accompany him on any of these vacations. Father pays one-half of the private school tuition for his stepchildren, and he plans to pay one-half of his stepson's college tuition when he matriculates at John Carroll University. At trial, Father was not willing to commit to paying for his own children's college educations, however. Instead, he would only say that he planned to talk to his children about college, but that paying the amount of child support being sought plus college costs "would be a lot." Although Father owned college investment accounts for both of his sons, he had not made any contributions to the accounts since February 17, 2009. As of June 30, 2012, each son's account was valued below $12,500.00. On the other hand, Father testified that he was prepared to pay $20,000 (one half of the tuition less scholarship aid) towards his stepson's first year of college.

{¶23} Father owns a $105,000 Mercedes M Class vehicle (which carries no loan), a $30,000 Porsche, a new Mercedes E Class vehicle driven by his current wife, and a 2003 Mercedes M Class vehicle driven exclusively by his stepson. He has not provided a vehicle or car insurance for his older son who drives. Father testified that he pays for dance and tennis lessons for his stepdaughter, and that he has never been unable to afford any extracurricular activities for his stepchildren. He did not testify that he was paying for any extracurricular activities for his children. He further admitted that he provides cell phones and computers for his stepchildren. University School provides Father's children with computers as part of the tuition, but only during the school year. Father gives his stepchildren allowances, but does not do so for his two sons.

{¶24} Father and his new family live in a house in Hudson. He paid over $500,000 for the home, and has made substantial renovations, including adding a $21,000 sound system/home theater. He also owns a $660,000 vacation home in Naples, Florida. He belongs to a country club and admits that he is able to vacation comfortably. He testified that he has been able to put money away for savings despite his spousal and child support obligations arising out of the July 28, 2010 judgment entry. Since he remarried, Father has purchased jewelry valued at over $100,000. He listed $650,000 in assets in a Charles Schwab account on a recent loan application for his condominium in Naples.

{¶25} Father testified that, since his divorce, he has given money to various family members. Copies of cancelled checks admitted into evidence indicate that Father gave over $35,000 to various family members. Father explained, "Well, from whom much is given much is expected I guess as they say."

{¶26} When asked about his children's standard of living, Father admitted that, other than their time at school, he did not really know a lot about their lifestyles. He testified that, from talking with his children, it "seems" as though they have been able to continue participating in extracurricular activities. Moreover, Father had "not heard from them anything that they were lacking."

{¶27} There was little evidence of the amount of time Father spends with the children. Mother indicated that the children did not spend much time in Father's home. The parties' agreed shared parenting plan provides that Father would have parenting time with the children every Monday and Thursday from 6:00 p.m. until 8:00 a.m. the next morning, and every other weekend from 6:00 p.m. Friday until 8:00 a.m. Monday. He is also entitled to four weeks in the summer with the children. Father did not take his children with him during the above-referenced

vacations with his stepchildren and current wife. He further testified that he works six to seven days a week, twelve to fourteen hours a day, and that he must travel fairly extensively overseas, sometimes for months at a time. Accordingly, the reasonable inference is that the children are not able to spend the full extent of Father's parenting time with him.

{¶28} The domestic relations court ordered Father to pay child support in the amount of $6000 per month from February 1, 2007, until July 1, 2012, when Mother's $20,000 per month spousal support payments ended. Thereafter, the court ordered Father to pay child support in the amount of $13,000 per month. This Court concludes that the domestic relations court was not unreasonable in determining those amounts. While there is no requirement that Father treat his children and stepchildren in the same manner, and we do not enunciate any such rule in that regard, the standard of living of the stepchildren provides compelling evidence regarding the standard of living the parties' two sons would have enjoyed had the parents' marriage continued.

{¶29} Father's career was on track for significant advancement even while the parties were married. He began working at Goodyear in 2002, three years before the parties separated. There is no evidence to indicate that his career would not have advanced in the same way had he remained married to Mother. Father's current wife does not work outside the home and there is no evidence that she makes any financial contribution to the family outside of $1400 per month that she receives for child support from her former spouse. Under those conditions, the stepchildren attend private schools, live in a lavish home (and vacation home), enjoy frequent vacations within the country and abroad, drive or ride in high-end vehicles, participate in extracurricular activities of their choosing, seemingly want for nothing, and receive allowances in addition.

{¶30} While the parties' children cannot be deemed to be living in squalor, the evidence indicates that they do not live in the level of opulence accorded to Father's stepchildren whom he supports. Father's income is 30 times that of Mother. Nevertheless, Mother attempts to provide the same high standard of living for the children on her income. It is simply not possible for her to do so. She has been able to provide luxurious vacations in part by using monies she received for spousal support and in part through the generosity of family and friends who have paid those costs. Moreover, the trial court heard evidence that Mother was dedicating some of her resources to prepare for her own future rather than expending those resources to maintain certain luxuries in the present for her children. Father, on the other hand, both provides for his own comfortable future well-being while providing a lavish current lifestyle for himself, his current spouse, and his stepchildren. The trial court was not unreasonable in concluding that the children cannot maintain a standard of living comparable to that which they would have enjoyed had the parents' marriage continued absent significant support from Father. Father acknowledges that the increase in his income since 2005 is "pretty significant," as is his ability to buy things for his children. Father's most recent tax return in evidence, his 2011 return, shows an adjusted gross income of over $1,700,000 and a tax liability of $500,000. Accordingly, his net income was over $1,200,000, the equivalent of $100,000 a month. Taking into consideration his admitted $22,000 per month budget, and without accounting for his increased annual income of almost $3,000,000, we cannot say that the trial court's exercise of discretion in apportioning six percent and thirteen percent, respectively of the noted time periods, of monthly assets for the benefit of Father's children was unreasonable, arbitrary, or unconscionable.

{¶31} As noted above, Father indicated that he believes that his children are "well cared for" despite his concession that he is not really aware of their standard of living. However, his

belief that the children's needs are being met misses the essence of the applicable legal standard. The standard employed in R.C. 3109.04(B) contemplates that children of a high-income marriage will already have their basic needs met. For this reason, the case-by-case inquiry is not focused upon their daily needs; rather, it is upon the standard of living that they would have enjoyed had the marriage continued. There is no dispute that the children's needs are being met. In fact, the children enjoy privileges well beyond the scope of those realized by many others. Again, that is not the standard. Given Father's remarriage, the trial court heard evidence as to the treatment of Father's stepchildren, thus providing a detailed example of the standard of living that Father's children would have enjoyed had the marriage continued. Given the evidence, it is not unreasonable to conclude both that Father's children would have enjoyed such a standard of living had the parents' marriage continued and that they would not be able to enjoy a comparable standard of living were the trial court to maintain child support at the prior amount of $1497.21 per month. Accordingly, the domestic relations court was not unreasonable in establishing child support in the amount of $6000 per month during the period of time in which Mother continued to receive spousal support in the amount of $20,000 per month. In this way, the trial court reasonably acknowledged Mother's obligation to both support her children and facilitate a standard of living commensurate with the parents' standard of living.

{¶32} Moreover, given the record before us, we cannot say that the trial court abused its discretion in awarding an increase in child support after July 1, 2012, to $13,000 per month. The trial court could have reasonably concluded that Mother, on her $100,000 annual salary, would no longer be able to maintain a standard of living for the children comparable to what they would have enjoyed had the marriage continued. Father argues that the current child support order inures "great prejudice" to him while providing "a completely unnecessary windfall" to Mother.

Father fails to explain how a (conservative) surplus monthly income of $65,000 ($100,000 net income based on 2011 tax return – [$22,000 monthly expenses + $13,000 child support]) prejudices his ability to provide for a secure future and an opulent present standard of living. Moreover, as Mother and the children necessarily live in the same home, Mother may realize some tangential benefit associated with her children's standard of living. In addition, as their parent, and given that supervision is a necessary component of parenting, she will reasonably accompany them on vacations, as would Father if he took the children on a vacation. Mother will also reasonably assume certain additional responsibilities and limitations on her personal time concomitant with coordinating the children's activities and schedules to allow them to take advantage of the privileges of such higher standard of living.

{¶33} Based on a review of the evidence, in consideration of the needs and the standard of living of the parents and of the children had the marriage continued, we cannot say that the domestic relations court was unreasonable in its determination of child support.

{¶34} For the above reasons, Father's third, fourth, and fifth assignments of error are overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING AN ARREARAGE OF $293,085 WHEN THERE WAS NO EVIDENCE PRESENTED OR OTHERWISE IN THE RECORD UPON WHICH TO BASE SUCH A DECISION, AND BY ORDERING [FATHER] TO PAY THE ARREARAGE IN ONE LUMP SUM AND/OR QUARTERLY PAYMENTS OF $36,634 IN ADDITION TO THE SUBSTANTIAL MONTHLY CHILD SUPPORT ORDER; AND IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶35} Father argues that the trial court erred by calculating an arrearage amount in the absence of any evidence of child support payments previously made by him. He further argues

that the trial court erred by ordering him to pay his arrearage in eight quarterly payments or in one lump sum. This Court agrees in part, and disagrees in part.

{¶36} Father premises his arguments in large part on his assertion that the domestic relations court erred in ordering child support effective as of February 1, 2007. As we previously determined that his argument in regard to the effective date of child support is barred by the doctrine of res judicata, his reiteration of that argument is not persuasive to demonstrate error in the calculation of the arrearage.

{¶37} Father further argues that the trial court's calculation of the arrearage amount is not based upon evidence received at trial. However, the trial court record bears out the fact that there was no child support order in the record until the court issued its July 28, 2010 judgment entry. The record further verifies the amount of child support ordered therein. In addition, Mother testified that, after the trial court ordered Father to pay child support, she has received the almost $1500 payment each month. Accordingly, there was testimony that Father was current in his child support obligation as it was originally established prior to the recalculation hearing on remand. Therefore, Father's argument that the court lacked any evidence by which to calculate the difference between what he had paid and the amount the trial court ordered in consideration of the parties' and children's standard of living must fail.

{¶38} To the extent that Father argues that the amount of the arrearage is against the manifest weight of the evidence, we agree that the amounts are irreconcilable with the evidence. Mother testified that Father was current in his previously ordered child support obligation for the 65-month period of February 1, 2007, until July 1, 2012. Accordingly, Father would have paid $97,318.65 (65 X $1497.21). Had he been paying the newly ordered monthly amount of $6000.00 during that same period, he would have paid a total of $390,000.00, leaving a lump

sum difference of $292,681.35 (rather than $293,085), or eight equal installment payments of $36,585.17 (rather than $36,634). To the extent that the trial court failed to explain this discrepancy, the second assignment of error is sustained.

{¶39} Finally, Father argues that the trial court erred by ordering him to pay his arrearage either in eight quarterly payments or in one lump sum payment. He does not explain, however, why it was error for the trial court to give him an option as to how to pay his arrearage. We have frequently recognized that "an appellant's assignment of error provides this Court with a roadmap to guide our review." *Akron v. Johnson*, 9th Dist. Summit No. 26047, 2012-Ohio-1387, ¶ 3, quoting *Taylor v. Hamlin-Scanlon*, 9th Dist. Summit No. 23873, 2008-Ohio-1912, ¶ 12, citing App.R. 16(A). We decline to chart our own course when, as in this case, the appellant has failed to provide any guidance. App.R. 12(A)(2); *see also Cardone v. Cardone*, 9th Dist. Summit No. 18349, 1998 WL 224934 (May 6, 1998) (holding that "if an argument exists that can support [an] assignment of error, it is not this court's duty to root it out.").

{¶40} Father's second assignment of error is sustained in part, and overruled in part. This matter is remanded to the domestic relations court for clarification and recalculation, if necessary, of the amount of Father's child support arrearage for the period from February 1, 2007, until July 1, 2012.

## III.

{¶41} Father's first, third, fourth, and fifth assignments of error are overruled. The second assignment of error is overruled in part, and sustained in part. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

> Judgment affirmed in part,
> reversed in part,
> and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

DONNA J. CARR
FOR THE COURT

BELFANCE, P. J.
GALLAGHER, J.
CONCUR.

(Gallagher, J., of the Eighth District Court of Appeals, sitting by assignment.)

APPEARANCES:

JOSEPH G. STAFFORD, Attorney at Law, for Appellant.

RICHARD A. RABB and KAITLYN D. ARTHURS, Attorneys at Law, for Appellee.