[Cite as *Crandall v. Crandall*, 2020-Ohio-625.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STEPHEN S. CRANDALL, | : | **O P I N I O N** |
| Plaintiff-Appellee/ Cross-Appellant, | : | |
| | : | **CASE NO. 2019-G-0202** |
| - vs - | : | |
| CHRISTINE CRANDALL, | : | |
| Defendant-Appellant/ Cross-Appellee. | : | |
| | : | |

Appeal from the Geauga County Court of Common Pleas, Case No. 2009 DC 00134.

Judgment: Affirmed in part, reversed in part, and remanded.

*Joseph G. Stafford* and *Nicole A. Cruz,* Stafford Law Co., LPA, 55 Erieview Plaza, 5th Floor, Cleveland, OH 44114 (For Plaintiff-Appellee/Cross-Appellant).

*Scott S. Rosenthal,* Rosenthal, Thurman, Lane, LLC, North Point Tower, 1001 Lakeside Avenue, E., Suite 1720, Cleveland, OH 44114 (For Defendant-Appellant/Cross-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant/cross-appellee, Christine Crandall ("Mother"), appeals the March 15, 2019 Judgment of the Geauga County Court of Common Pleas modifying the child support obligation of appellee/cross-appellant, Stephen Crandall ("Father"), and, inter alia, awarding attorney fees. Father cross appeals. For the reasons set forth herein,

the judgment of the Geauga County Court of Common Pleas is affirmed in part, reversed in part, and remanded.

{¶2} The parties were married on May 30, 1997 and divorced on June 3, 2010. At the time of the divorce, the parties had four minor children. Mother is a registered nurse and Father is an attorney. Since the divorce, Father has started his own law firm.

{¶3} Just prior to the divorce decree, the parties entered into a separation agreement and agreed to a shared parenting plan. The terms of the separation agreement were expressly based on the parties' income history, which was approximately $1,000,000 for Father in 2009, and the equal possession parenting schedule.

{¶4} The separation agreement and shared parenting plan were incorporated into the divorce decree. The terms stipulated that Father was to pay $4,000 per month to Mother as child support for the four children. Mother received no periodic spousal support, but only a lump sum spousal support payment, $25,000 of which was contingent on her not seeking modification of the amount of child support prior to July 1, 2013. The parties further agreed that Mother need not show a change in circumstances in her first motion to modify child support after July 1, 2014 [sic]. Father further agreed to pay all the "extracurricular activity expenses" and fund the 529 education savings accounts for the children's college expenses. All uncovered medical expenses are to be paid 90% by Father and 10% by Mother.

{¶5} In November 2013, Father filed a motion to terminate the shared parenting plan. While that motion was still pending, on July 11, 2014 Mother filed a motion to modify child support. In November 2014, the parties agreed to dismiss all pending

2

motions without prejudice, though if Mother refiled her motion to modify child support, she retained the right to request any adjustment be made retroactive to the date of her original filing in July 2014.

{¶6} In December 2014, Father again filed a motion to terminate the shared parenting plan. Mother subsequently filed three motions: a motion to show cause and for related attorney fees, alleging Father failed to comply with the Judgment Entry of Divorce by refusing to pay for extracurricular activities for the children; a motion to modify child support; and a motion to modify shared parenting plan.

{¶7} The parenting plan motions were resolved in February 2016 with the court's denial of Father's motion and granting Mother's motion to modify the shared parenting plan. Mother ultimately withdrew her motion to show cause and, in April 2016, filed a motion for attorney fees pertaining to, inter alia, the motion to modify child support.

{¶8} The outstanding motions were addressed at a hearing before a magistrate on April 14, 2017 and August 10, 2017. The parties' eldest child emancipated June 1, 2017. The magistrate issued his decision on January 29, 2018, recommending, inter alia, the child support obligation be modified to $1,200 per child per month for the three remaining minor children effective June 1, 2017, and recommending an award of $30,000 in attorney fees. Both parties filed objections. The trial court issued its judgment entry on March 15, 2019, adopting the magistrate's order in all respects except the amount of child support, which it modified to $1,450 per child per month for each of the three minor children. Mother timely appealed, assigning four errors for our review; Father cross-appeals.

3

{¶9} "It is well established that a trial court's decision regarding child-support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion." *Long v. Long*, 162 Ohio App.3d 422, 2005-Ohio-4052, ¶8 (3d Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142 (1989). "[T]he term 'abuse of discretion' is one of art, connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). "'[W]here the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, ¶70, quoting *State v. Beechler*, 2nd Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶67.

{¶10} **I. Access to Father's Income Tax Returns**

{¶11} Mother's first assignment of error states:

{¶12} I. The Trial Court erred and abused its discretion in not requiring full and proper proof of Appellee's income, in limiting Appellant's review and accessibility to Appellee's proof of income and in relying on limited pages of Appellee's income tax returns as the only evidence of his income.

{¶13} Mother argues the court did not allow her a thorough review of Father's income, as certain tax returns were filed under seal. She asserts she did not have access to the returns until the first day of trial and then was limited to only the first two pages. She asserts disclosure was necessary because Father testified that he runs personal expenses through his business, including 401(k) contributions and his family's vehicles, and that a true inquiry into Father's tax returns was necessary to determine the true amount of his income for support purposes.

4

{¶14} Father asserts that Mother's characterization of this issue is factually inaccurate. The record supports his position. The court initially ordered Father to submit complete copies of his personal federal income tax returns for 2011 to 2015 to the court under seal. The magistrate subsequently issued an order on August 1, 2017, ten days prior to the second day of trial, which expressly stated that it reviewed the complete returns and determined it was not necessary to keep any of the information confidential; the order made Father's personal federal income tax returns for 2012 through 2015 available to both parties for inspection and copying any time during business hours on or before the first day of trial.

{¶15} It appears from the record that it was Mother's own failure to take action that prevented her from having more than the first two pages of Father's personal federal income tax returns. Accordingly, Mother's first assignment of error is without merit.

{¶16} **II. Determination of Child Support Obligation**

{¶17} Mother's second assignment of error states:

{¶18} II. The Trial Court erred and abused its discretion in its determination of child support.

{¶19} It is undisputed that Mother and Father's combined annual income exceeds $150,000, thus the trial court must determine the child support obligation on a case by case basis, considering "the needs and the standard of living of the children," pursuant to R.C. 3119.04(B). Mother asserts that the court erred in its determination of child support in six specific ways.

{¶20} *A. Retroactivity of Order*

{¶21} The Trial Court erred and abused its discretion by failing to make the child support order retroactive to the date of filing.

5

{¶22} R.C. 3119.84 allows the court to "modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the court support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered." This has been interpreted to "plainly state[ ] that a court may retroactively modify a child-support payment that became due after the obligee of the order had notice of the petition to modify the support order." *Byrd v. Knuckles*, 120 Ohio St.3d 428, 2008–Ohio–6318, ¶4. *See also Phelps v. Saffian*, 8th Dist. Cuyahoga No. 103549, 2016-Ohio-5514, ¶55.

{¶23} As this and other Ohio courts have noted, the general rule is that "'[a]bsent special circumstances, an order of a trial court modifying child support should be retroactive to the date such modification was first requested; the effective date of modification must coincide with some significant event in the litigation, and an arbitrary date may not be employed.'" *Mauerman v. Mauerman*, 11th Dist. Trumbull No. 2002-T-0049, 2003-Ohio-3876, ¶18, quoting *Sutherell v. Sutherell*, 11th Dist. Lake No. 97-L-296, 1999 WL 417990, *4 (June 11, 1999). "The general rule is based on equitable principles in recognition of 'the substantial time it frequently takes to dispose of motions to modify child support obligations.'" *Zamos v. Zamos*, 11th Dist. Portage No. 2002-P-0085, 2004-Ohio-2310, ¶13, quoting *Hamilton v. Hamilton*, 107 Ohio App.3d 132, 139-140 (6th Dist.1995).

{¶24} Mother argues that the court erred in making the child support modification effective June 1, 2017, the date the oldest child was emancipated, instead of the date of her first filing, in July 2014, because it fails to take into consideration the three years

that passed since the filing of that motion during which she was parenting four unemancipated children.

{¶25} Father counters that it would be inequitable to make the order retroactive to the first filing because the lengthy delay allowed the trial court to render a decision based upon his current income rather than his income at the time the motion was filed. In support, he cites *Phelps, supra,* in which the Eighth District Court of Appeals found the trial court erred in considering specific events (e.g. the flooding of obligee's home) that occurred after the date of filing. However, because Father's average income is substantially similar whether or not the court included years of income after the filing of the motion, we need not reach that issue.

{¶26} Here, Mother filed her first motion to modify child support on July 11, 2014 and her second motion to modify child support on December 30, 2014. Father's average income for 2011 through 2014, excluding the highest and lowest earning years, is $1,861,678. His average income for 2011 through 2016, excluding the highest and lowest earning years, is $1,802,223. In his decision, the magistrate rounded this number down to $1.8 million. A difference of less than $60,000 in light of Father's substantial income is negligible.

{¶27} Additionally, while the magistrate's recommendation to make the modification effective the date the eldest child emancipated was reasonable considering the adjustment he recommended, the trial court erred by modifying the child support obligation but not adjusting the effective date. The magistrate reasoned that Mother was not fully discharging her duty of care to the children by working less than full time. He also determined that she did not meet her burden to provide the court with evidence

7

to support her request for $20,000.00 per month; she itemized about $9,500.00 per month of actual expenses but did not provide the court with an estimate of the cost of the expenses that she limited or went without. Accordingly, the magistrate recommended an award of $3,600.00 per month explaining:

> [u]nder the statutory child support table or schedule (R.C. §3119.021) the amount of support for three children at every combined income level above $16,200 is not three-fourths of the amount for four children at that income level, but instead is about 90% of the support for four children. It is reasonable to infer that the support schedule takes into account the differences between a parent's fixed and variable expenses for the support children, and implicitly recognizes that the emancipation of a child, which affects only variable expenses directly attributable to that child, does not reduce a parent's reasonable need for support to maintain her fixed costs. The same logic should apply in this case. [Mother's] expenses did not decrease by $1[,]000 per month when [the eldest child] graduated from high school in June 2017 but instead dropped by a smaller amount. Her total expenses for housing, her car, utilities, etc., likely decreased very little, and some expenses not at all. Her variable expenses, for food, clothing, sports participation, etc. certainly decreased. The Court cannot determine, on the evidence the parties offered, the exact amount of the decrease. The Court will therefore rely on the schedule to estimate the percentage difference between the support for three children and the amount for four children. This Magistrate concludes that [Father] should pay [Mother] child support equal to 90% of the original $4,000 per month, or $3,600 per month total support for the parties' remaining three minor children.

{¶28} Thus, the magistrate essentially recommended no increase in child support but recommended that, starting the date the oldest child emancipated, she receive 90% of the amount she had been receiving prior.

{¶29} The trial court, however, disagreed with the magistrate and found that an increase in child support was merited. Instead of receiving less than what she had been receiving before, the court increased the amount to $1,450 per child per month. It did not, however, adjust the effective date, stating only "the court finds no error in the

8

Magistrate's reasoning in selecting this date." While that effective date would have been reasonable if the court had adopted the magistrate's recommendation of $3,600 per month, because the court modified this amount, increasing it from the amount Mother had been receiving before and failing to take into consideration the emancipation of the eldest child, reconsideration of the effective date was in order and the court erred in this regard.

{¶30} Modifying the magistrate's recommendation, the court determined Mother was entitled to $1,450 per child per month, starting from the date the eldest child emancipated, for a total of $4,350 for three children. The magistrate recommended, and the court adopted, that at the emancipation of the eldest child Mother was entitled to 90% of the amount she was receiving for four children. Following the logic of the court, Mother was also entitled to the additional 10% over that $1,450 amount, i.e. an additional $435, for the period from the date she filed the motion to modify child support to the date the eldest child emancipated, during which time Mother was caring for four children. Though Mother's initial request for an increase in child support, filed July 11, 2014, was subsequently dismissed, the court recognized that she retained the right to request child support retroactive to that date if she refiled. Thus, it follows that Mother was entitled to receive $4,785 for the period between July 11, 2014 and June 1, 2017, in addition to the $4,350 effective June 1, 2017. Accordingly, it appears the court erred in failing to consider the increase prior to June 1, 2017, and thus, we remand for further consideration.

{¶31} The first part of Mother's second assignment of error has merit.

{¶32} ***B. Basic Needs of the Children***

{¶33} Under her second assignment of error, Mother also argues:

{¶34} The Trial Court erred and abused its discretion in affirming the Magistrate's erroneous analysis pertaining to the children's needs, and how they factor into a modification of child support.

{¶35} Mother argues that the magistrate improperly found that the children's basic needs were being met, because her home is in need of maintenance which she cannot afford. These maintenance items include a new roof (she has paid for patching, but the roof continues to leak and cause damage); removal of a tree which canopies over the home; damage caused by squirrels inside the walls; replacing the air conditioning unit that is original to the house; repair of the rotting deck; replacing the cracked cement driveway; and replacing a nonfunctional dishwasher. Mother argues these "certainly qualify as 'needs' for the children, beyond mere luxuries or extras" required for safe and appropriate housing.

{¶36} Father argues, and the record shows, that Mother did not testify at trial that the home was unsafe. He also correctly notes that mother testified only that the furnace and air conditioner were old and would need replaced in the future. Finally, he argues that a non-functional dishwasher is not a basic need of the children and does not render Mother's home unsafe or unlivable.

{¶37} As the Eighth District Court of Appeals has held, "[f]or purposes of R.C. 3119.04, the children's "needs" include food, clothing, shelter, medical care, and education." *N.W. v. M.W.,* 8th Dist. Cuyahoga No. 107503, 2019-Ohio-1775, ¶21. There was no testimony or evidence presented that the children had inadequate food, clothing, shelter, medical care, and education, or unsafe living conditions; to the contrary, the record shows that the children lived a comfortable middle-class lifestyle at both parents' homes.

{¶38} These types of home repairs are relevant when considering the standard of living of the children as required R.C. 3119.04(B). As the court considered these maintenance and home repairs when considering the difference in the standard of living between Mother and Father's homes, the court did not err in finding these home repairs were not basic needs of the children.

{¶39} The second part of Mother's second assignment of error is without merit.

{¶40} *C. Quantitative and Qualitative Considerations*

{¶41} Under her second assignment of error, Mother also argues:

{¶42} The Trial Court erred and abused its discretion in affirming the Magistrate's erroneous analysis pertaining to the needs of the children and their standard of living.

{¶43} Mother argues that the trial court erroneously fixated on the children's quantitative needs without considering their qualitative needs. She notes that courts across Ohio have held that in child support cases where the combined income of the parties exceeds $150,000, the qualitative needs of the children must be considered in the determination of child support. As such, she asserts, the trial court erred by focusing on a quantitative approach, as evidence by the court adopting the magistrate's conclusion that an increase in child support was contingent upon Mother providing written estimates of costs for repairs and quantitative estimates for the costs of all the expenses that Mother cannot provide for the children. She asserts that the court improperly required her to estimate the amount needed to bridge the standard of living gap between households, arguing that she would have to incur the expenses, go into substantial debt, and then essentially seek reimbursement for the expenses.

{¶44} Her argument is grossly hyperbolic. One need not incur the actual expense of a college visit, for example, in order to estimate the amount of money it

would require. Mother provides no explanation of why she could not estimate an amount by researching, for example, potential hotel costs and fuel or airfare costs. As the magistrate correctly noted, Mother bore the burden of providing the court with evidence to substantiate her claims and she did not meet that burden by noting a category of expenses she goes without or limits, in an "unknown" amount.

{¶45} Neither is the court erroneously relying on quantitative estimates by asking for these estimated costs. The record shows the magistrate and court's decision considered both the quantitative and qualitative needs of the children and considered the standard of living that the children had at both parents' homes.

{¶46} Further, the case that Mother cites in support is clearly distinguishable. In *Wells v. Wells,* 9th Dist. Summit No. 27097, 2014-Ohio-5646, the obligor father did not take advantage of the full amount of time with the children that he was awarded, took his stepchildren on lavish vacations, bought them luxury vehicles to drive, gave them an allowance, paid for their extracurricular activities, and provided cell phones and computers, but did not do any of those things for the children for whom he owed child support. The court stated that "[w]hile there is no requirement that Father treat his children and stepchildren in the same manner, * * * the standard of living of the stepchildren provides compelling evidence regarding the standard of living the parties' two sons would have enjoyed had the parents' marriage continued." *Id.* at ¶28.

{¶47} Here, on the other hand, the evidence supported a finding that although Father earned a significant income, the children lived a comfortable middle-class lifestyle. The two eldest children shared a new Jeep Cherokee, earned their allowances by doing chores, did not attend private school, and did not have designer clothing and

accessories. Nevertheless, the magistrate found, and the court agreed, that it was reasonable to infer that the children probably are, in a qualitative sense, less comfortable at Mother's home than they are at Father's home, if for no other reason than that Mother does not have as much money to afford a house with the luxuries and amenities that Father does.

{¶48} The third part of Mother's second assignment of error is without merit.

{¶49} ***D. Terms of the Separation Agreement***

{¶50} Under her second assignment of error, Mother also argues:

{¶51} The Trial Court erred and abused its discretion by prohibiting testimony regarding the parties' original child support order and the $25,000 payment made to Appellant for ongoing modification.

{¶52} Mother argues the parties contemplated a change in child support after July 2013 based upon the Separate Agreement and original child support worksheet, which set child support at $4,000 ($1,000 per child) per month, and if Mother refrained from seeking an increase for three years, she would receive $25,000. She argues the trial court erred in failing to consider that the $25,000 was additional child support given in exchange for accepting lower child support those three years.

{¶53} Though we reject Father's argument that Mother failed to preserve this argument for appeal, we agree the magistrate properly considered the $25,000 payment for the limited purpose of clarifying what monies Mother received, and properly excluded evidence from outside the separation agreement as to what the payment was for.

{¶54} "'The parol evidence rule states: "absent fraud, mistake, or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements." *Galmish v. Cicchini*, 90 Ohio St.3d 22, 26,

13

734 N.E.2d 782, 2000-Ohio-77, quoting 22 Williston Contracts, (4th Ed.1999), 569-570, Section 33:4.' *Euclid Asphalt Paving Co., Inc. v. Mount Zion Fellowship Church*, 11th Dist. Lake No. 2004-L-175, 2005-Ohio-7049, 2005 WL 3610463, ¶ 16. Therefore, when the terms of an agreement are clear and unambiguous, parol evidence cannot be considered in construing the terms. *Currier v. Penn-Ohio Logistics*, 187 Ohio App.3d 32, 2010-Ohio-198, 931 N.E.2d 129, ¶ 74 (11th Dist.)." *Hague v. Kosicek*, 11th Dist. Ashtabula No. 2018-A-0060, 2019-Ohio-2089, ¶28.

{¶55} The terms of the separation agreement are unambiguous. Mother received $25,000 in spousal support if she did not seek to modify child support until July 2013. Mother, however, sought to offer evidence that the parties agreed to those terms in order to grant Father a three-year reprieve while he transitioned from working for a law firm to starting his own law firm. Mother argues this additional payment shows Father was clearly aware that $4,000 per month in child support was insufficient. However, this expressly contradicts the terms of the separation agreement, which state that "[t]he child support figure contemplates the expenses, needs and extraordinary costs of the children, their activities and other lifestyle expense of the children." Accordingly, the magistrate properly excluded this evidence, as its admittance would violate the parol evidence rule.

{¶56} The fourth part of Mother's second assignment of error is without merit.

{¶57} *E. Use of the Extrapolation Method*

{¶58} Under her second assignment of error, Mother also argues:

{¶59} The Trial Court erred and abused its discretion by failing to consider the extrapolation method in its analysis of child support.

14

{¶60} Mother argues that the court erred by failing to consider extrapolation, which has been held to be appropriate in high-income cases, citing *Longo v. Longo,* 11th Dist. Geauga Nos. 2008-G-2874, 2009-G-2901, 2010-Ohio-3045. Father counters that Ohio courts have cautioned against rote extrapolation, which can lead to large and unrealistic child support amounts in high-income cases.

{¶61} The extrapolation method "takes the applicable percentage under the child support schedule for couples with combined incomes of $150,000 and applies it directly to whatever income the parents make." *Siebert v. Tavarez*, 8th Dist. Cuyahoga No. 88310, 2007-Ohio-2643, ¶32. In *Longo,* this Court held that "[a]lthough the court may choose to extrapolate a child support figure using the worksheet, it is not bound by statute to do so." *Id.* at ¶40.

{¶62} The Eighth District Court of Appeals has suggested this method would be most helpful in cases in which the combined income of the parents only marginally exceeds the $150,000 base requirement and expressed doubt as to "whether the court fulfills its statutory duty to determine child support on a case-by-case analysis as required by RC. 3119.04(B) when it by rote extrapolates a percentage of income to determine child support." *Siebert, supra,* at ¶34. "[A]s the combined income of the parents rises sharply, mere extrapolation can lead to large, and possibly unrealistic, child support amounts." *Id.* at ¶35. We agree.

{¶63} This and other Ohio appellate courts have held that "the failure to consider 'the needs and the standard of living of the children who are the subject of the child support order and of the parents,' as required by R.C. 3119.04(B), constitutes an abuse of discretion." *Strimbu v. Strimbu*, 11th Dist. Trumbull No. 2010-T-0104, 2011-Ohio-

3629, ¶14, quoting *Moore v. Moore*, 182 Ohio App.3d 708, 2009–Ohio–2434, ¶19 (3d Dist.).

{¶64} Here, the record shows the court considered the use of the extrapolation method but found that the evaluation of the standard of living and lifestyle of the children would have lived had the marriage continued was proper under the circumstances. As Father's income far exceeds the $150,000 threshold, it is likely pure extrapolation would have the effect of income equalization or de facto spousal support as opposed to ensuring that the children enjoy the same standard of living as if the parties had remained married. We find no abuse of discretion on the part of the court in not using the extrapolation method under these circumstances.

{¶65} The fifth part of Mother's second assignment of error is without merit.

{¶66} *F. Calculation of the Obligation Amount*

{¶67} Under her second assignment of error, Mother also argues:

{¶68} The Trial Court erred and abused its discretion in failing to order an increase in child support that properly reflects Appellee's averaged income.

{¶69} The magistrate found, and the court agreed, that because Father works on contingency and his income can vary drastically from year to year, an average of Father's annual income over the course of several years would provide the best picture of Father's financial state. In doing so, the court excluded the highest and lowest earning years, which resulted in the average being $1,802,223 per year, instead of $2,504,904 per year. Mother argues it was improper to remove the outliers because the significant outlier of 2014 made the standard of living between households even more divergent and Father felt the benefits of the outlier high year for years to come. We discern no such error.

16

{¶70} The 2014 outlier was several million dollars more than for any other year. We cannot say the court erred in determining 2014's income was not indicative of Father's usual income. While he felt the benefits of the outlier high year, he also felt the detriment of the lowest year, which was also excluded. By excluding the highest and lowest years, the court was adjusting for the volatile nature of Father's business.

{¶71} The sixth part of Mother's second assignment of error is without merit.

{¶72} **III. De Facto Spousal Support**

{¶73} Mother's third assignment of error states:

{¶74} III. The Trial Court erred and abused its discretion in finding that Appellant is not fully discharging her common law of support, and that an increase in child support in this matter amounts to de facto spousal support.

{¶75} Mother is a registered nurse and has worked for a cosmetic surgeon for over 15 years. After the divorce, Mother increased her work hours, to wit: when she has the children per the parenting schedule, she works an average of 28 hours per week; when the children are with Father, she worked an average of 34 hours per week. At trial she testified that she was also training for an additional PRN position, which she estimated would add 16 more hours per month. When asked why she could not work 40 hours weeks, she consistently stated that if she worked more, she would lose the spontaneity and flexibility to spend time with the kids and attend their sporting events.

{¶76} She asserts the trial court inadequately considers how hard she works to support her children in a financial and nurturing sense. However, in light of Mother's protestations of financial need and her apparently voluntary decision to work less than full time, the trial court did not abuse its discretion in finding Mother was not fully discharging her duty to support the children.

17

{¶77} Mother also asserts the trial court erred in finding that Mother's request amount of child support, $20,000 per month, would amount to a de facto award of spousal support and erroneously relied on *Pearlstein v. Pearlstein,* 11th Dist. Geauga No. 2008-G-2837, 2009-Ohio-2191. In support, she cites *Wells, supra,* and *N.W., supra.* As discussed under her second assignment of error, however, *Wells* is factually distinguishable.

{¶78} In *N.W.,* the Eighth District Court of Appeals affirmed the decision of the trial court granting an increase in child support from $1,500 per month to $7,000 per month. In replying to the father-obligor's assertion that the increase constituted de facto spousal support, the court explained that the parties had agreed to "frontload" the spousal support to give the father substantial tax benefits and that mother had been using monies from spousal support to maintain the lifestyle the children were accustomed to prior to the divorce. It noted that the initial child support amount was intended to provide tax benefits to the father and did not reflect the needs of the children. These factors are not present in the case at bar.

{¶79} Instead, the trial court appropriately applied *Pearlstein;* Mother's attempts to differentiate *Pearlstein* are meritless. While the exact incomes, numbers of children, and expenses are not exactly the same in this case, *Pearlstein* as a whole is analogous. There, the obligor father and obligee mother each had custody of the children half the time and the obligor earned six times what the obligee earned. The trial court awarded obligee $799.28 per month per child and, in lieu of an upward deviation, obligor was to pay for all the extracurricular expenses, private school tuition, and uncovered medical

bills. The obligee objected, arguing the court failed to consider the needs and standard of living of the children.

{¶80} This Court upheld the trial court's decision, noting "there is no abuse of discretion in the court's child support award as 'a trial court should tread carefully when determining to award a child support amount that is greater than that necessary to cover the current needs of the children; awarding a higher amount in this situation could encroach on [the obligee's] own common law duty to support the children.'" *Id.* at ¶67, quoting *Ohlemacher v. Ohlemacher,* 9th Dist. Summit No. 04CA008488, 2005-Ohio-474, ¶36. "'[I]n high-income cases, the support obligation calculated usually exceeds the amount actually required to provide for the children, but * * * allocating an amount to satisfy the standard of living requirement runs the risk of making the award "less like child support and more like an equalization of the incomes of the two household."'" *Pearlstein, supra,* quoting *Bryant v. Bryant,* 5th Dist. Coshocton Nos. 97CA8 & 98CA1, 1999 WL 98110 (Jan.28, 1999).

{¶81} The facts are substantially similar here. Father pays for the extracurricular activities and Mother failed to demonstrate what monetary amount would cover the needs of the children that the current child support order does not cover and how the amount awarded failed to sufficiently address those needs and the standard of living.

{¶82} The trial court did not err in finding Mother was not fully discharging her duty to support the children and did not err in finding that Mother's request for $20,000 per month in child support would amount to de facto spousal support. Accordingly, Mother's third assignment of error is without merit.

{¶83} **IV. Father's Cross-Appeal**

19

{¶84} In addition to disputing Mother's claims, Father also cross-appeals, arguing for his first assignment of error:

{¶85} [1.] The trial court abused its discretion in granting mother's motion to modify child support.

{¶86} Under this assignment of error, Father makes four arguments:

{¶87} *A. Consistency with Ohio Law*

{¶88} The trial court's findings concerning Ohio Revised Code Section 3119.04(B) are inconsistent with Ohio law.

{¶89} The court found that the child support guidelines worksheet suggests a minimum support amount of $697.39 per month per child. In its decision, it stated "[t]he court recognizes that R.C. §3119.04(B) requires that the amount of support [Father] is ordered to pay [Mother] must exceed this amount."

{¶90} Father cavils that the court erred in so finding, arguing R.C. 3119.04(B) expressly prohibits a court from awarding less than the minimum amount determined by the child support guidelines but does not require that the amount *exceed* this amount.

{¶91} While the court was not technically correct in its statement, the error had no bearing on the amount of child support the court awarded. This technicality would possibly be relevant if the parties' income was marginally over the $150,000 threshold and the court was considering a child support amount close to the amount suggested by the worksheet. That is not the case here, where the parties' income drastically exceeds the $150,000 threshold and the court is considering a child support obligation that is twice the minimum suggested amount. Any error in the court's statement is harmless.

{¶92} The first part of Father's first assignment of error is without merit.

{¶93} *B. Mother's Burden of Proof*

{¶94} Father also argues:

{¶95} The trial court erred in granting Mother's Motion to Modify Child Support after finding that Mother had failed to meet her burden of proof.

{¶96} Father asserts that the magistrate found Mother had not met her burden of proof to show that any increase in child support was merited and argues that the court erred in ignoring this finding. This argument, however, misinterprets the magistrate's finding.

{¶97} The magistrate found that Mother did not meet her burden of proof to show that her requested amount of child support, $20,000 per month, was merited. It did, however, find that she met her burden enough to show that some increase in child support was proper. Mother showed that the parties had a high standard of living prior to the divorce, that Father's income has increased since the divorce, that Father is able to take the children on nicer vacations, hold nicer parties, take the children out to eat at more expensive restaurants, and established the expenses that she spends on the children.

{¶98} As the argument is based on an inaccurate interpretation of the magistrate's findings, the second part of Father's first assignment of error is without merit.

{¶99} *C. Duty to Support Children*

{¶100} Father also argues:

{¶101} The trial court's increase of child support is contradictory to the Magistrate's finding that Mother is not fully discharging her common-law duty to support the minor children.

{¶102} As discussed under Mother's second assignment of error, the court found that Mother is not fully discharging her duty to support the children. Father argues that finding is contradictory to the amount the court awarded in child support. However,

21

Father's arguments under this section are exclusively focused on how Mother is failing to discharge her duty, and he offers no argument other than a blanket assertion that the trial court ignored this fact. We do not agree with his assertion. The record clearly shows that the magistrate considered this fact, and expressly states in his recommendation that Mother "is not fully discharging her own common-law duty to support the children. * * * She did not explain why she could not work 8 or 16 hours more per week."

{¶103} The court considered that Mother was not fully discharging her duty of support. However, even in imputing income to Mother, the court found that some increase was warranted, due to the drastic difference in that parties' incomes. There is no evidence to suggest that the court abused its discretion in so finding.

{¶104} The third part of Father's first assignment of error is without merit.

{¶105} **D. Standard of Living**

{¶106} Finally, Father argues:

{¶107} The testimony and evidence presented to the trial court reveals that the children enjoy the same standard of living they would have enjoyed had the parties' marriage continued and that all of the needs and expenses of the minor children are met under the current support order.

{¶108} It is well established that "[c]hildren have a right to expect the same support and care they would have reasonably expected if their parents had remained married." *Van Kan v. Mattheus*, 11th Dist. Geauga No. 98-G-2139, 1999 WL 476139, *5 (June 30, 1999), citing *Colizoli v. Colizoli*, 15 Ohio St.3d 333, 336 (1984). *See also Phelps, supra,* at ¶23.

{¶109} The magistrate found that Father offered unrebutted testimony that the parties had a "ruinously profligate" lifestyle and standard of living before the divorce.

22

Father asserts that this demonstrates that the minor children likely would not have enjoyed the same standard of living as they do now had the parties not divorced, as a result of the parties' prior spending habits, which resulted in substantial debt.

{¶110} He asserts that all the children's needs are met and that it was improper for the magistrate to assume that the children are less comfortable at Mother's house, in the magistrate's words, "if for no other reason than that [Mother] does not have as much money as [Father] to afford a house with the luxuries and amenities of his." He points out that Mother's home is on a sizable lot, in a desirable location, with a basketball hoop, hot tub, lacrosse equipment, and a trampoline set.

{¶111} However, the record shows that Father's house is significantly bigger, is not in need of repairs, and has more amenities than Mother's house does. He can afford to, and does, throw more extravagant parties. He takes the children on vacations more lavish than Mother can afford to take.

{¶112} Despite evidence that the children live comfortable middle-class lifestyles at both parents' homes, it is not unreasonable to infer the children are more comfortable when they have access to more amenities and activities, as they do when they are at Father's house.

{¶113} The fourth part of Father's first assignment of error is without merit.

{¶114} **IV. Attorney Fees**

{¶115} Mother's fourth and final assignment of error states:

{¶116} IV. The Trial Court erred and abused its discretion in the award of attorney fees.

23

{¶117} An appellate court reviews an award of attorney fees under an abuse of discretion standard. *Ivancic, supra*. An award of post-decree attorney fees is governed by R.C. 3105.73(B), which states:

{¶118} In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.

{¶119} Mother asserts the trial court abused its discretion in awarding her only $30,000 in attorney fees and expenses, when she submitted evidence of $79,350 in attorney fees over the three years and asserts that Father filed numerous continuances in an effort to delay proceedings. She also asserts the magistrate erred in finding there was no admissible evidence to support an award of attorney's fees for prior counsel, which was purported to total $9,615.

{¶120} Father disputes Mother's claims under this assignment of error and cross-appeals, arguing for his second and final assignment of error:

{¶121} [2.] The trial court abused its discretion by granting mother's motion for attorney's fees.

{¶122} Preliminarily, Father asserts he was not properly served the Motion for Attorney Fees through the clerk of courts. The magistrate rejected this argument and we find no error. Father was served the motion through counsel via electronic email, which is proper service under Civ.R. 5(B); he received it and responded to it. Even if we were to find an error in service, any such error was harmless.

24

{¶123} Moreover, in addition to denying Mother's assertions, Father also argues the court improperly granted attorney fees and litigation expenses incurred prior to the filing of her Motion for Attorney Fees, noting that approximately two-thirds of the expenses were incurred after the filing.

{¶124} "It has been held to be improper for a court to award fees incurred prior to the filing of a motion for fees." *Darden v. Darden*, 8th Dist. Cuyahoga No. 75508, 2000 WL 640590, *7 (May 18, 2000), citing *Seagraves v. Seagraves*, 125 Ohio App.3d 98, 103 (2nd Dist.1997). See also *Tonti v. Tonti*, 10th Dist. Franklin Nos. 03AP-494 and 03AP-728, 2004-Ohio-2529, ¶118. However, the First District Court of Appeals in *Patterson v. Patterson,* 197 Ohio App.3d 122, 2011-Ohio-5644 (1st. Dist.), held that "as long as a party has notice that attorney fees are at issue, a trial court is permitted to sua sponte award attorney fees under [R.C. 3105.73(B)]." *Id.* at ¶18. In *Patterson*, as here, the mother filed a motion to show cause in which she asked for attorney fees. Though the request for attorney fees was particular to that motion, the First District upheld the court's award of attorney fees finding that the father was on notice that attorney fees were at issue in the entirety of the case based on the prior motion. While the facts here are substantially similar, we decline to follow the First District's holding in this case.

{¶125} Mother's argument that Father was on notice that attorney fees were at issue since the December 2014 motion to show cause is without merit, as the fees she requested in that motion were specific to that motion. The motion for attorney fees filed in April 2016 was Father's first notice that attorney fees were at issue in the matter of child support.

25

{¶126} The record shows that Mother attempted to offer evidence of $74,486.45 in attorney fees. The court did not allow evidence of $9,615, which was incurred by prior counsel who did not testify as to the amount and necessity of the fees. Accordingly, the court considered $64,871.45 in attorney fees incurred by Mother. Since the filing of her motion for attorney fees in April 2016, she has incurred $23,540 in attorney fees. Accordingly, the court erred in awarding mother $30,000 in attorney fees as this amount necessarily includes fees incurred prior to the filing of the motion.

{¶127} However, contrary to Father assertion, the court did not err in awarding any attorney fees whatsoever. "Pursuant to R.C. 3105.73(B), a court may award all or part of reasonable attorney fees in 'any post-decree motion or proceeding that arises out of an action for divorce[.]' 'In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.' *Id."* *Dragon v. Dragon*, 11th Dist. Ashtabula Nos. 2011-A-0037 and 2011-A-0039, 2012-Ohio-978, ¶24.

{¶128} Here, the court properly excluded the evidence of the $9,615 in attorney fees filed by Mother for first counsel, both because they were incurred prior to Mother's motion for attorney fees and because that attorney did not attest to the necessity of the work and amount of attorney fees. However, counsel for Mother testified at trial as to the amount and necessity. The court acknowledged that counsel was charging less than her usual rate, found that the charges were necessary, and considered the dramatic income gap between the parties. Accordingly, the court did not err in granting

attorney fees generally; the only error was considering fees incurred prior to the filing of the motion.

{¶129} Accordingly, Mother's fourth assignment of error is without merit, and Father's second cross assignment of error has merit only as it relates to fees incurred prior to the filing of the motion.

{¶130} In light of the foregoing, the judgment of the Geauga County Court of Common Pleas is reversed and remanded for reconsideration of the effective date and the award of attorney fees and affirmed in all other regards.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.